IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTOPHER ANASAZI, *et al,* )<br>)<br>)<br>v.  )    Case No. 2:16-cv-2227<br>)<br>THE UNITED STATES OF )<br>AMERICA, *et al,* )<br>)<br>      Defendants. ) | |

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiffs Christopher Anasazi and John Doe A, by and through his counsel of record, Dan Curry and Sarah Brown, and for their causes of action against the Defendants, hereby states as follows:

1. Plaintiffs' causes of action arise under the Federal Tort Claims Act of 1948, 28 U.S.C. §§1346(b), 2671 *et seq.*, and 38 U.S.C. §7316(a), (f), and Kansas common law.

2. Jurisdiction rests with this Court pursuant to 28 U.S.C. § 1346(b). The Court additionally has supplemental jurisdiction over Plaintiff's claims against Defendant Wisner pursuant to 28 U.S.C. § 1367(a), as Plaintiff's claims against Defendant Wisner arise out of the same case and controversy as Plaintiff's claims against Defendants United States of America and McDonald.

3. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the Judicial District where a substantial number of the events involved occurred, or where the plaintiff resides, if there is no real property at issue. The negligent acts described herein took place in Leavenworth County, Kansas; plaintiff John Doe A resides in

Kansas; plaintiff Anasazi is a resident of Washington; and there is no real property at issue. Venue is therefore proper in the District Court of Kansas.

4. Plaintiffs' claims arose from negligent acts or omissions that occurred at the Dwight D. Eisenhower VA Medical Center ("VAMC") located at 4101 South 4th Street, Leavenworth, KS 66048. These acts occurred in Spring of 2014 and earlier.

5. After Plaintiffs' submission of administrative FTCA claims, they received letters denying their claims in early 2016. Plaintiffs have therefore exhausted administrative remedies.

6. Robert McDonald is named in his official capacity as the Secretary of the Department of Veterans Affairs.

7. Mark E. Wisner formerly resided at 641 E. 8th Street, Horton, KS 66439 and now resides at Atchison County DC, 518 Parallel St., Atchison, KS 66002. At all times relevant to this lawsuit, he was an employee, agent and/or servant of the Agency operating in the course of scope of his employment and agency, and licensed to practice as a physician's assistant, while holding himself out to the public as a medical doctor.

8. At the time of the acts complained of herein, Defendant Wisner was the agent, actual or apparent, of the Defendant United States of America, was acting in the scope and course of his employment, and was acting in the context of providing medical services; as such, all acts of Defendant Wisner are imputed to his employer/principal, Defendant United States of America.

9. Plaintiff Anasazi is a resident of the State of Washington and a friend to John Doe A.

10. John Doe A is a U.S. veteran, a resident of the State of Kansas, who sought medical treatment at the Leavenworth VA Medical Center. His true name will be provided to Defendants.

11. In 1999, a Kansas nurse reported Defendant Wisner to the Kansas Board of Healing Arts for inappropriate, sexualized conduct with a patient and mis-prescription of medications.

12. In 2011, a Leavenworth VA Medical Center patient had described Defendant Wisner's inappropriate conduct to a VA Medical Center case-manager.

13. In 2012, a VA Leavenworth VA Medical Center patient reported Defendant Wisner's inappropriate conduct to the VA's patient advocate office.

14. Throughout Mr. Wisner's tenure working as a physician assistant for the VA, the VA should have had a physician closely supervising Mr. Wisner's treatment of patients.

15. Upon information and belief, throughout Mr. Wisner's tenure at the VA, numerous VA patient files maintained by Defendant Wisner contained open and obvious mis-prescription and over-prescription of medications to veterans that his supervising physicians knew or should have known indicated that he was providing negligent care to veterans.

16. Defendants knew or should have known that Defendant Wisner had victimized other veterans at the Leavenworth and Topeka VA medical centers; that he was

3

a danger to his patients; that he was an impair practitioner; that he had propensities and a history of providing improper medical care and/or had propensities and a history of violating patient boundaries.

17. Defendants failed to monitor Defendant Wisner's clinical activities to keep them within the authorized scope of practice and medically appropriate as required pursuant to VHA Directive 1063 and/or the physician assistant licensure act, K.S.A. § 65-2801, et seq.

18. Defendants failed to monitor Defendant Wisner's clinical activities to ensure the presence of ongoing competency and medical appropriateness.

19. Defendants failed to take inappropriate action to correct and/or stop his inappropriate conduct, including but not limited to: removing Defendant Wisner from patient care, the use of chaperones, or termination and report to the Kansas Board of Healing Arts.

20. The content of Defendant Wisner's query to Plaintiff Anasazi at the conclusion of his physical examination of John Doe A included but was not limited to asking him if he were John Doe A's sex partner, and asking him to expose his penis so he could see who the bigger "stud" was.

21. Defendant Wisner's scope of employment included prostate and genital exams, taking medical histories, inquiring about family status and sexual history, all as part of his general authority to perform physical exams of veterans.

22. Defendant Wisner had been convicted of a sex-related crime that could have been discovered had the VA investigated Wisner's record appropriately.

4

23. VHA Handbook 1100.19 applies to credentialing physician's assistants at VA medical centers, and that it requires the VA to conduct credentialing checks prior to a new hire, reappointment or transfer, specifies that the service chief is responsible for "[r]eviewing all credentials … and for making recommendations regarding appointment and privileging action; documenting these recommendations in VetPro; and … [m]onitoring and surveillance of the professional competency and performance of those who provide patient care services…. This includes both the focused professional practice evaluation for new privileges (practitioners new to the facility as well as practitioners requesting new privileges) and the ongoing monitoring and continued surveillance over time."

24. VHA Handbook 1100.19 further states: "The credentialing process includes verification, through the appropriate primary sources, of the individual's professional education; training; licensure; certification and review of health status; previous experience; professional references; malpractice history and adverse actions; or criminal violations, as appropriate." The credentialing process also includes screening through the appropriate State Licensing Board.

25. VHA Handbook 1100.19 further states: "(1) Each privileged health care practitioner must have a Credentialing and Privileging file established electronically in VetPro with any paper documents maintained … (2) Information obtained, to be used in the credentialing process, must be primary source verified … and documented in writing, either by letter, report of contact, or web verification. …"

26. VHA Handbook 1100.19 further states that VA medical practitioners, where required by the Drug Enforcement Agency to be certified by the DEA to prescribe controlled substances, the VA must physically view the DEA certification prior to appointment or reappointment.

27. Specification that VHA Handbook 1100.19 further states when at the time of an initial appointment or after a reappraisal, the VA must obtain and file in VetPro information about any "involvement in administrative, professional or judicial proceedings"; and information about any malpractice proceedings.

28. Specification that VHA Handbook 1100.19 further states that at the time of any reappointment, initial reappointment or transfer, the VA must check the National Practitioner Data Bank regarding any information on the practitioner, and the VA must monitor any information that calls into question the professional competence or conduct of an individual, documenting efforts to obtain more information every 30 days until all necessary information is collected and determined.

29. Specification that VHA Handbook 1100.19 further states: Physician Assistants must be reappraised periodically, and the reappraisal process "must include: the practitioner's statements regarding successful or pending challenges to any licensure or registration; limitation, reduction or loss of privileges at another hospital; loss of medical staff membership; pending malpractice claims or malpractice claims closed since last reappraisal or initial appointment; mental and physical status; and any other reasonable indicators of continuing qualification and competency."

30. An averment that VA supervisory employees failed to perform actions required by VHA Handbook 1100.19.

31. VHA Directive 1063 requires the VA supervising physician to randomly sample five patient encounters each quarter and engage in weekly management sessions with physicians assistant, and that the VA failed to follow this specific mandate.

6

32. VA supervisory employees with oversight over Wisner failed to performed the required actions contained in VHA Directive 1063.

33. VHA Directive 2012-030 required that Wisner be subjected to a screening by checking with the HIDPB database, which collects, among other facts, information regarding "health-care related criminal convictions."

34. VA supervisory employees failed to perform the required actions contained in VHA Directive 2012-30.

35. As a result of Wisner's conduct, plaintiffs suffered extreme, long-lasting, medically significant emotional distress for which medical treatment is necessary.

### COUNT I
### NEGLIGENCE – MEDICAL MALPRACTICE
### John Doe A against All Defendants

36. Plaintiff John Doe A hereby incorporates by reference the allegations contained in Paragraphs 1 – 35 as if fully restated herein.

37. Plaintiff John Doe A moved to Kansas in 2014 and set up an initial appointment with the Leavenworth VA Medical Center to initiate treatment.

38. In the Spring of 2014, Plaintiff Anasazi accompanied Plaintiff John Doe A to the Leavenworth VA Medical Center to provide him support.

39. Defendant Wisner was a physician's assistant for the VA who as part of his job duties practiced and prescribed medicine, including performance of physical exams, under the close supervision of a VA physician.

40. Defendant Wisner owed Plaintiff John Doe A the duty to use that degree of learning and skill ordinarily possessed and used by members of his profession

7

and of that school of medicine in the community in which Defendant Wisner practiced medicine.

41. Defendants Agency and McDonald owed Plaintiff John Doe A a duty to exercise reasonable care as the Plaintiff's condition required.

42. All Defendants owed Plaintiff John Doe A the duty of using ordinary or reasonable care and diligence in providing him medical care.

43. All Defendants violated their duties to Plaintiff John Doe A when their medical treatment failed to meet the standard of care.

44. Defendant Wisner violated the standard of care when he:

   a. conducted an improper and/or unnecessary examination of Plaintiff John Doe A's genitalia.

   b. failed to recognize his own impairment and refer the Plaintiff to another practitioner.

   c. failed to wear gloves during the exam of his genitalia.

   d. used his position to elicit unnecessary private information from Plaintiff John Doe A.

45. In addition, Defendant Wisner admitted failing to meet the standard of care for a physician's assistant practicing in Kansas by:

   a. Repeatedly violating "The physician assistant licensure act …, by … making inappropriate sexual comments to his patients, overprescribing to his patients, and not meeting the appropriate standard of care"

    b. "Practicing as a physician assistant without reasonable skill and safety to his patients;"

    c. Failing "to keep written medical records that accurately described the services rendered to his patients;"

    d. Performing "unnecessary testicular and genital exams and performed unnecessary contact of his patients for no legitimate medical purpose;"

    e. Committing "repeated acts of professional incompetency on patients;"

    f. Failing "to adhere to the applicable standard of care to a degree that constitutes ordinary negligence when he repeatedly performed unnecessary genital and testicular examinations, overmedicated patients, and failed to wear gloves and did not refer patients as needed;" and

    g. "[E]ngaging in a pattern or practice or behavior" with his patients that "demonstrates a manifest incapacity or incompetence to perform professional services as a physician assistant when he repeatedly performed unnecessary genital and testicular examinations, overmedicated patients, failed to wear gloves and did not refer patients as needed."

46. Defendants Agency and McDonald violated their standard of care when they:

    a. failed to properly supervise Defendant Wisner.

    b. failed to adequately investigate his background.

    c. retained him in their employment.

    d. failed to provide adequate and appropriate medical care.

    e. failed to adhere to VHA Directive 1063, which mandates "appropriate clinical oversight, consultation, and patient care management" of a physician's assistant employed by the VA; "[m]onitoring the PA's clinical activities to ensure they are within their authorized Scope of Practice and are medically appropriate"; providing "timely notification to the Chief of Service of any deficiencies in relationship to the [physician assistant's] established Scope of Practice for corrective action"; "[p]roviding input into period assessments of the [physician's assistant]…" and conducting "periodic monitoring of the [physician assistant's] clinical activities through a retrospective review of at least five randomly selected patient encounter notes each quarter to ensure the presence of ongoing competency and medical appropriateness."

47. Defendant Wisner's negligent acts were performed while he was on-the-clock, on the Defendants' premises, using the Defendants' equipment, while representing himself as the Defendants' employee; were occasioned by the Plaintiff seeking medical care; were performed amidst and in the context of the provision of medical services; and were reasonably incidental to his employment; were within the scope of his employment; and Defendants Agency and McDonald are therefore vicariously liable for the tortious acts of Defendant Wisner.

48. The resulting harms suffered by the Plaintiff John Doe A were foreseeable consequences of Defendants' negligence.

49. As a direct and proximate result of Defendants' negligence, Plaintiff John Doe A suffered past, present and future shame, humiliation, medically significant emotional distress, loss of enjoyment of life, loss of sleep, and anger.

## COUNT II
## NEGLIGENT SUPERVISION, RETENTION AND HIRING
### All Plaintiffs against Defendants USA and McDonald

50. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 – 49 and 85-90 as if fully restated herein.

51. Defendant Wisner was a physician's assistant for the VA, who, as part of his job duties, practiced and prescribed medicine, including performance of physical exams and making inquiries into sexual and familial matters, under the close supervision of a VA physician.

52. Defendants owed Plaintiffs the duty to exercise reasonable care to employ, supervise, control and retain a competent and careful physician's assistant to:

    a. provide competent medical care to the Plaintiffs.

    b. perform work which involves a risk of physical harm unless it skillfully and carefully done.

    c. perform his duties in a reasonable manner that would avoid causing foreseeable harm to third parties.

53. Defendants violated that duty when they failed to exercise reasonable care when they decided to employ and continue to employ Defendant Wisner.

11

54. Defendants knew or should have known that Mr. Wisner was unable to provide competent medical care to the Plaintiffs or to conduct himself in a way that avoided an unreasonable risk of harm to third parties.

55. Upon information and belief, the Defendants knew or reasonably should have known that:

    a. Defendant Wisner had victimized other veterans at the Leavenworth VAMC.

    b. Defendant Wisner was a danger to patients.

    c. Defendant Wisner was an impaired practitioner.

    d. Defendant Wisner had propensities to provide improper medical care.

    e. Defendant Wisner had propensities to violate patient boundaries.

    f. Defendant Wisner had propensities to inflict emotional distress.

    g. Defendant Wisner's supervising physicians had not providing the requisite level of supervision and review of his activities, patient care and records.

56. Defendants further had knowledge and reason to believe that Defendant Wisner's particular qualities and propensities to provide inadequate and inappropriate medical care, violate patient boundaries, and to act as an impaired practitioner presented an undue risk of harm to patients and third parties.

57. Defendants knew or should have known that continued employment of Defendant Wisner would continue to expose patients and third parties, such as Plaintiffs, to potential harm.

58. Plaintiffs' harms were within the risk created by Defendant Wisner's known propensities.

59. Defendants possessed reason to believe that employment of Defendant Wisner would result in undue risk of harm to others.

60. Defendants further knew or should have known that Defendant Wisner's conduct around patients and third parties such as Plaintiffs required reasonable control and supervision.

61. Defendants failed to provide adequate oversight and review of Defendant Wisner's performance of his job duties.

62. Defendants further failed to adequately supervise and control Defendant Wisner given his known propensities toward harming patients.

63. The resulting harms suffered by the Plaintiffs were foreseeable consequences of Defendants' negligence.

64. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered past, present and future shame, humiliation, medically significant emotional distress, lost enjoyment of life, loss of sleep, and anger.

## COUNT III
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### All Plaintiffs against All Defendants

65. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 – 35 as if fully restated herein.

66. Defendant Wisner's examination of Plaintiff John Doe A was committed with reckless disregard for the Plaintiff.

13

67. Defendant Wisner's offensive inquiry to Plaintiff Anasazi was committed with reckless disregard for the Plaintiff.

68. Defendant Wisner's conduct was extreme and outrageous.

69. Defendant Wisner's conduct was committed within the course and scope of his employment by Defendants Agency and McDonald, and therefore Defendants Agency and McDonald are vicariously liable for Defendant Wisner's outrageous acts.

70. Defendants Agency and McDonald's failure to supervise, control and fire Defendant Wisner was extreme and outrageous.

71. Defendants' conduct was the direct and proximate cause of foreseeable mental distress for the Plaintiffs.

72. Plaintiffs' mental distress was extreme, severe, medically diagnosable and significant such that no reasonable person should be expected to endure it.

73. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered past, present and future shame, humiliation, medically significant emotional distress, lost enjoyment of life, lost sleep, and anger.

### COUNT IV
### OUTRAGE
### All Plaintiffs against All Defendants

74. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 – 35 as if fully restated herein.

75. Defendant Wisner, while operating in a medical context, within the scope of his job duties, and precipitated by plaintiff seeking medical care, engaged in outrageous conduct that was in reckless disregard of the plaintiffs' wellbeing.

76. Defendants United States of America and McDonald, in the context of providing the plaintiff medical services, engaged in outrageous conduct by abdicating all responsibility to supervise Defendant Wisner appropriately, in reckless disregard of plaintiffs' wellbeing.

77. Defendant Wisner's conduct was extreme and outrageous by any reasonable standard and in any community in America, and goes beyond the bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society.

78. The conduct of Defendants United States of American and McDonald was extreme and outrageous by any reasonable standard and in any community in America, and goes beyond the bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society.

79. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered past, present and future shame, humiliation, medically significant, extreme and severe emotional distress, loss of enjoyment of life, lost sleep and anger.

### COUNT V
### BATTERY
### Plaintiff John Doe A against All Defendants

80. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 – 35 as if fully restated herein.

81. Defendant Wisner, while operating in a medical context, within the scope of his job duties, committed a battery upon the plaintiff by offensive contact without any justification.

82. Defendants United States of America and McDonald are vicariously liable for Defendant Wisner's conduct, as the United States of America is responsible for all intentional torts committed by its employees in the context of providing medical services to the plaintiff.

83. As a direct and proximate result of Defendants' negligence, Plaintiff suffered past, present and future shame, humiliation, medically significant, extreme and severe emotional distress, loss of enjoyment of life, lost sleep and anger.

## COUNT VI
## INVASION OF PRIVACY-INTRUSTION UPON SECLUSION
## All Plaintiffs against All Defendants

84. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 –63 as if fully restated herein.

85. Defendant Wisner, while acting within his scope of employment, intentionally interfered with plaintiffs' seclusion.

86. Defendant Wisner, while acting within his scope of employment, pried into plaintiffs' personal affairs and concerns by asking them questions about their personal life, sexual activities and genitalia during a medical examination of John Doe A.

87. A reasonable person would be highly offended by Mr. Wisner's intrusive conduct.

88. Wisner's intrusive conduct served the interest of his employer in that the information elicited and the questions asked could have obtained medically relevant information.

89. Wisner's intrusive conduct, however, was not medically necessary, was overly intrusive and improper.
90. As a direct result of Wisner's conduct, plaintiffs suffered extreme, long-lasting, medically significant emotional distress for which medical treatment is necessary, as well as violation of their privacy interest

WHEREFORE, Plaintiffs prays for a judgment against the Defendants in an amount that is fair and reasonable for actual and compensatory damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

Respectfully submitted,

/s/Dan Curry
Dan Curry, KS22750
Sarah Brown, KS12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFFS

## DESIGNATION OF PLACE OF TRIAL

Come Now, Plaintiffs, and hereby designate Kansas City, Kan., as the place of trial.

Respectfully submitted,

/s/Dan Curry
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFFS